IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



| | | |
|---|---|---|
| BERNARD SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H – 03 – 5864 |
| | § | |
| THOMAS RIDGE, SECRETARY OF HOMELAND SECURITY, | § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's Motion to Dismiss Unexhausted Claims; Second Motion to Dismiss, alternatively, Motion for Summary Judgment; and Motion to Dismiss Plaintiff's Requests for Compensatory Damages and for a Jury Trial.

I. BACKGROUND

A. Procedural History

Plaintiff began working for the United States Customs Service[1] ("Agency") in 1987. In 1995, he filed a grievance against his supervisor, Paul Rimmer, for age discrimination. The complaint was settled in 1996. After that, Plaintiff worked as a full time Safety Officer, GS-12, at the East Texas Customs Management Center ("CMC") in Houston, Texas. In 1999, he was reassigned to be a supervisor over the administrative staff of the Port of Houston. This reassignment marks the beginning of a series of events that Plaintiff claims were discriminatory and retaliatory, which created a hostile work environment that ultimately led him to retire.

---

[1] Now known as the United States Customs and Border Protection, within the Department of Homeland Security.

On December 11, 2000, Plaintiff contacted the Agency's Equal Employment Opportunity Commission ("EEOC") manager alleging that he was discriminated against on account of age, he was retaliated against for filing a prior EEOC complaint, and he was subjected to a hostile work environment. On February 2, 2001, Plaintiff filed a formal complaint against the Agency, alleging that he was discriminated against because of his race (Caucasian), color (white), sex, and age (56), and retaliated against for prior EEOC activity. Plaintiff subsequently narrowed the scope of his EEOC complaint to allege only that he had been subjected to a hostile work environment based on age discrimination and/or reprisal for prior EEOC activity. Investigation of the complaint began on July 30, 2001. While his complaint was under investigation, Plaintiff continually amended it to add incidents that he believed were the result of discrimination and/or retaliation. Plaintiff retired in June 2002, while his EEOC complaint was still pending.

Plaintiff's claim was assigned to an administrative judge ("AJ") for resolution. Prior to the hearing on the complaint, the AJ issued an order stating that Plaintiff's amendments were included in his complaint, resulting in a list of forty incidents to be reviewed; the order also stated that Plaintiff's complaint would be evaluated on the limited basis of reprisal and age discrimination. Plaintiff did not object to this order.

The AJ conducted a two-day hearing on Plaintiff's case, in which he considered whether Plaintiff was subjected to a hostile work environment based on his age and/or reprisal for prior EEOC activity. The AJ evaluated the forty incidents Plaintiff had reported and concluded that Plaintiff was not subjected to a hostile work environment because of his age or because he participated in the EEOC process. The Agency issued a final order implementing the AJ's decision. Shortly thereafter, Plaintiff filed suit under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq., and Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, et seq., stating claims for discrimination and hostile work environment on account of race, sex, color, and age, and retaliation for prior EEOC activity. Defendant subsequently filed the present motions.

**B. Factual Allegations**

Plaintiff's claims are based on the following incidents, all of which formed a part of his EEOC complaint:

1. In 1999, he was reassigned to a supervisory position without receiving a promotion;

2. Employees were continually moved from under his supervision;

3. He was reassigned duties that he had no experience or resources to perform;

4. He was told by his supervisor, John Babb, to wear a necktie and dress shirt to work;

5. Babb yelled at him in front of two other employees;

6. Babb denied his request to receive work duties in writing;

7. Babb denied his request to have three employees assist him;

8. He was not told about a class in preventative maintenance for radios;

9. He was not allowed to attend a training session on confined spaces;

10. Babb counseled him regarding missing deadlines;

11. Babb required him to attend training on how to handle multiple projects, even though Plaintiff used to teach the same type of class;

12. Babb requested that Plaintiff inform employees that they could not have electrical appliances at their work stations;

13. Plaintiff was the only supervisor who did not receive a copy of a presentation he was to give to his employees;

14. Babb gave him assignments that were not his responsibility and could not be completed in stated time frames;

15. Supplies were stored in his office;

16. Babb delayed approval of his travel voucher for four days;

17. Babb failed to inform him of a retirement seminar;

18. Babb gave him tasks that he was not trained for or capable of performing;

19. Babb instructed others not to help Plaintiff;

20. Plaintiff received erroneous information from supervisors;

21. Babb denied Plaintiff's request for administrative leave, which was granted to all other employees affected by Tropical Storm Allison;

22. Plaintiff was not allowed to take a four-month TDY to Federal Law Enforcement Training Center;

23. He was denied access to his office;

24. He was returned to the Port of Houston against doctor's advice;

25. Babb placed him on a Performance Improvement Plan;

26. Bill Smith, Labor Relations Specialist, accused him of taking a long lunch;

27. Babb delayed Plaintiff's worker's compensation claim;

28. Babb placed Plaintiff on restrictive sick leave;

29. Plaintiff was denied a lateral transfer to a Safety Officer position in the CMC;

30. Babb talked to Plaintiff about how everyone he knows that worked past retirement wished they had gone sooner, and that the extra money was not worth the extra time spent working; and

31. Plaintiff retired due to his working conditions.

## II. EXHAUSTION OF CLAIMS

### A. Title VII Claims

Defendant moves this Court to dismiss those claims that Plaintiff did not administratively exhaust. A federal court has no jurisdiction to consider Title VII claims when a party has failed

to exhaust administrative remedies. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994). The scope of a Title VII suit is limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the administrative charge. *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). As the Fifth Circuit stated:

> A Title VII cause of action "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."

*Id.* (quoting *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983).

The complaint Plaintiff filed with the EEOC, which was heard before the AJ, was specifically related to the issues of hostile work environment based on age and retaliation for prior EEOC activity. In this lawsuit, Plaintiff alleges that he was discriminated against, and subjected to a hostile work environment, on account of race, sex, color, and age, and that he experienced reprisal for prior EEOC activity. Defendant argues that Plaintiff's claims for discrimination based on race, sex, and color, should be dismissed because they were not exhausted through the EEOC process. Plaintiff disagrees, stating that the AJ accepted his amendments to the complaint and, since he is not raising any new issues in this lawsuit, he has properly exhausted his claims.

Although Plaintiff did administratively exhaust his claims for age discrimination and reprisal for prior EEOC activity, he did not exhaust his claims for discrimination based on race, sex, or color. Neither the EEOC, nor the AJ, evaluated Plaintiff's complaint in light of these allegations. Since he failed to administratively exhaust these claims, the Court has no jurisdiction to consider them.

5

## B. ADEA Claim

Defendant also argues that Plaintiff's claim of constructive discharge should be dismissed because it was not exhausted. Constructive discharge is one element of a prima facie case for age discrimination.[2] Although Plaintiff's EEOC complaint did not focus primarily on constructive discharge, the nature of his claim was age discrimination, and the AJ did consider Plaintiff's allegation that he had to retire due to working conditions in the context of age discrimination. Plaintiff's claim of constructive discharge is an extension of his claim for hostile environment, because he argues that his work environment was so hostile that he was forced to retire. The factors that the Court must consider in evaluating Plaintiff's constructive discharge argument are the same ones that the AJ examined in reviewing Plaintiff's hostile work environment claim. Because Plaintiff exhausted his claim of hostile work environment based on age discrimination, the Court may properly consider Plaintiff's allegation that he was constructively discharged because of his age.

Defendant's Motion to Dismiss Unexhausted Claims is therefore **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims that he was discriminated against and subjected to a hostile work environment, on account of race, sex, and color, are **DISMISSED**.

---

[2] Plaintiff's claim of constructive discharge is based on age discrimination, which is an action brought under the ADEA. The exhaustion requirements for a federal employee suing under the ADEA differ from those under Title VII. A federal employee may file an action with the EEOC before bringing a civil action in federal district court, but is not required to do so. See 29 U.S.C. § 633a(d) ("When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action."). Since Plaintiff did file a complaint with the EEOC for age discrimination, the Court applies the same standard used in Title VII cases to determine whether Plaintiff's claim of constructive charge based on age discrimination is properly before this Court.

6

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (citations omitted). Evidence is construed in the light most favorable to the non-moving party. *Id.*

"[A] complete failure of proof concerning an essential element of [Plaintiff's] case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for Defendant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If Defendant shows that there is a lack of evidence to support Plaintiff's case, Plaintiff "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (citation omitted).

#### B. Hostile Work Environment

Defendant argues that Plaintiff has failed to make out a prima facie case of hostile work environment based on age.[3] To succeed on this claim, Plaintiff must show that he was subjected to such severe or pervasive discriminatory conduct that it created an objectively hostile work environment. *See Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000). The elements of a

---

[3] Neither the Supreme Court, nor the Fifth Circuit, has decided whether the hostile work environment doctrine extends to cases governed by the ADEA. Assuming, arguendo, that it does, Plaintiff nevertheless fails to make a prima facie case of hostile work environment.

7

prima facie case are: (1) Plaintiff belongs to a protected group;[4] (2) he was subjected to unwelcome harassment; (3) the harassment was based on age; and (4) the harassment affected a term, condition, or privilege of employment. *See Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353 (5th Cir. 2001). In determining whether a hostile environment existed, courts should consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker*, 214 F.3d at 625 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)). Defendant asserts that Plaintiff has failed to prove the third and fourth elements of his prima facie case.

Plaintiff lists several actions that he believes constitute harassment, but offers no evidence that any such conduct was based on his age. His long list of incidents detailing bothersome conduct is almost entirely bereft of any reference to age. The only incident Plaintiff states that contains even a remote connection to age is a conversation he had with Babb, in which Babb made a comment about knowing people who had worked past retirement age and wished they had not done so. Plaintiff argues that this comment shows that all of Babb's actions towards him were directed towards forcing Plaintiff to retire because of his age.[5]

This isolated comment does not come close to demonstrating that any harassing acts were motivated by age discrimination. Even if the actions Plaintiff complains of are considered "unwelcome harassment," they cannot sustain a claim of hostile work environment. Because Plaintiff offers nothing more than unsubstantiated, conclusory statements that he was discriminated against because of his age, he has failed to prove the third element of a prima facie case of hostile work environment. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

---

[4] The ADEA protects persons who are at least 40 years of age. 29 U.S.C. § 633a(a).
[5] It should be noted that another of Plaintiff's complaints – that Babb failed to inform him of a retirement seminar – seems to controvert Plaintiff's argument.

1429 (5th Cir. 1996) (stating that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the non-movant's burden in a motion for summary judgment).

By failing to meet the third element of his prima facie case, Plaintiff cannot possibly prove the fourth. Plaintiff has failed to prove that the complained of harassment was based on age, which means that he has not shown any discriminatory conduct. Without showing any discriminatory conduct, Plaintiff cannot offer evidence that it was severe, physically threatening or humiliating, or that it unreasonably interfered with his work performance. Plaintiff has therefore failed to make a prima facie case of a hostile work environment based on age discrimination.

### C. Age Discrimination: No Constructive Discharge

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, Plaintiff must prove: (1) he is a member of the protected class; (2) he was qualified for the position that he held; (3) he was discharged; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000) (citation omitted). Plaintiff has not made a prima facie case because he was not discharged by Defendant.

Even though Plaintiff was not formally discharged by Defendant, he may satisfy the discharge requirement by proving constructive discharge. *Id.* at 782. This is a heavy burden to carry.

9

>To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. Stated more simply, [Plaintiff's] resignation must have been reasonable under all the circumstances. Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but [the Court] consider[s] the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) (citations omitted).

Plaintiff has offered no evidence that he was demoted, experienced a reduction in salary, was reassigned to work under a younger supervisor, or was given any offer of early retirement. Although Plaintiff baldly states that he experienced a reduction in job responsibilities and was reassigned to menial or degrading work, the evidence that Plaintiff provides on these points illustrates that he was given additional responsibilities, which differed in nature from the tasks he previously performed, but were not menial or degrading. Plaintiff's claim clearly stems from the fact that he was dissatisfied with his job reassignment; but his dissatisfaction does not amount to constructive discharge. *See Brown*, 207 F.3d at 782-83 (holding that there was no constructive discharge where the plaintiff's reassignment did not involve a reduction in salary or benefits; did not involve menial or degrading work; and did involve supervision of fewer employees than before the reassignment).

The crux of Plaintiff's constructive discharge argument is that Babb badgered, harassed, and humiliated him in a calculated attempt to encourage him to resign because of his age. Again, Plaintiff describes a number of incidents that he believes prove this point, but he fails to present any objective evidence that Babb intended to badger, harass, or humiliate him; Plaintiff's subjective belief of Babb's motivation does not prove constructive discharge. *See id.* (finding no

harassment or humiliation to support the plaintiff's claim of constructive discharge where there was no objective evidence that the defendant intended to badger, harass, or humiliate the plaintiff). Moreover, since the actions of which Plaintiff complains are not sufficient to support a claim of hostile work environment, Plaintiff cannot possibly show that they amounted to a constructive discharge. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."). Simply put, Plaintiff's working conditions were not so intolerable that a reasonable employee would have felt compelled to resign.

### D. Retaliation for Prior EEOC Activity

Defendant also challenges the sufficiency of Plaintiff's retaliation claim. To prove retaliation under the ADEA by circumstantial evidence, Plaintiff must first establish a prima facie case by showing that: (1) he engaged in activity protected by the ADEA; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse action. *Holt v. JTM Indus.*, 89 F.3d 1224, 1225-26 (5th Cir. 1996). Once Plaintiff establishes a prima facie case of retaliation, the burden shifts to Defendant to provide a legitimate, non-discriminatory reason for its actions. *Grizzle v. Travelers Health Network*, 14 F.3d 261, 267 (5th Cir. 1994). If Defendant meets this burden, then Plaintiff bears the ultimate burden of showing that the proffered reasons are a pretext for retaliation, by demonstrating that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity. *Id.*

#### 1. Protected Activity

The ADEA "prohibits an employer from retaliating against an employee because 'such individual' has opposed a practice prohibited by the ADEA or has participated 'in any manner'

in a proceeding under the ADEA. *Holt*, 89 F.3d at 1226 (quoting 29 U.S.C. § 623(d)). Plaintiff alleges that he engaged in protected activity: (1) in 1995, by filing a grievance against his supervisor, Paul Rimmer, for age discrimination; (2) on July 22, 1998, when he testified in the Internal Affairs Investigation of a fellow employee, Quentin Lewis;[6] and (3) on December 11, 2000, by initiating contact with the EEOC manager to report age discrimination by his supervisor, John Babb, which was followed by the filing of a formal complaint on February 2, 2001.

Testifying in an internal investigation of another employee is not a proceeding under the ADEA, and therefore is not protected activity. But Plaintiff has met the first element of his prima facie case of retaliation because he engaged in protected activity when he filed claims against his supervisors for age discrimination.

2. **Adverse Employment Action**

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). Plaintiff's complaints are numerous, but most of them do not constitute an ultimate employment decision and cannot amount to retaliation under the ADEA.

The Fifth Circuit has found that the following actions do not amount to ultimate employment decisions: refusing to allow the plaintiff to attend a training conference, giving her incorrect information regarding work tasks, requiring her to get manager approval on her written work product, and criticizing her work to government vendors, *Dollis v. Rubin*, 77 F.3d 777,

---

[6] Plaintiff also states that he was scheduled to be a witness in Lewis's EEOC administrative hearing, but does not offer adequate proof of this claim. He provides evidence to show that he was scheduled to be in a "hearing" for Lewis, but the nature of the hearing is unclear. Also, Plaintiff never asserts that he actually participated in the hearing.

779-81 (5th Cir. 1995); changing locks, restructuring office procedures, clarifying job duties, and issuing reprimands, *Green*, 284 F.3d at 657-58; refusing a request for a purely lateral transfer,[7] *Burger v. Central Apt. Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999); and placement on a performance improvement plan, *Felton v. Polles*, 315 F.3d 470, 488 (5th Cir. 2002). The majority of Plaintiff's claims are akin to those that the Fifth Circuit has held do not qualify as adverse employment actions.

Plaintiff, however, does complain of some incidents that might qualify as adverse employment actions. First, he asserts that he was forced to take a supervisor's position without receiving a promotion or salary increase. This action could constitute a failure to promote and a failure to compensate, both of which are ultimate employment decisions. Moreover, the Fifth Circuit has indicated that an unwanted reassignment may also be an ultimate employment decision. *See Walker*, 214 F.3d at 629 (stating that "removal from a major account without other consequences (such as an unwanted reassignment)" is not an ultimate employment decision) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Although a failure to promote and a failure to compensate are ultimate employment decisions, Plaintiff has not proved the existence of either. It is true that he was assigned to a supervisor's position, but he has not shown that the position should have been accompanied by a promotion or salary increase. Both before and after his reassignment, Plaintiff was a GS-12 employee. The person who previously held the position that Plaintiff was moved to was also a GS-12 employee. Aside from Plaintiff's assertion that becoming a supervisor usually involves a promotion and pay raise, he has not provided any evidence that this specific reassignment should have included them.

---

[7] A purely lateral transfer is one that involves essentially the same job title, benefits, duties, and responsibilities as the previous position. *Burger v. Central Apt. Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999).

In any event, Plaintiff has been adamant that this was an unwanted reassignment, which could qualify as an ultimate employment decision. There is no need for the Court to decide this issue, however, because as will be discussed later in this opinion, even if it did qualify as an adverse employment action, there is no causal connection between the reassignment and either of Plaintiff's protected activities.

Plaintiff has additionally claimed that his request for administrative leave was denied and he was placed on restrictive sick leave. These actions, if true, are ultimate employment decisions. *See Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 521 n.20 (5th Cir. 2001) ("[T]he denial of paid leave constitutes an adverse employment action."). The evidence supports the contention that Plaintiff's request for administrative leave was denied, but not that he was denied any sick leave.

Plaintiff was placed on restrictive sick leave, but he has not provided any proof that he was actually denied sick leave. Rather, he was required to provide a doctor's note to substantiate his requests for sick leave before they would be granted. The evidence shows that, even after Plaintiff was informed that he had to comply with this procedure, he was granted sick leave on several occasions.

Finally, Plaintiff alleges that he was constructively discharged. Although constructive discharge would qualify as an adverse employment action, *see Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997), Plaintiff has failed to prove that he was constructively discharged.

After sorting through all of Plaintiff's complaints, the only one that qualifies as an adverse employment action is the denial of administrative leave. This is sufficient to prove the second element of Plaintiff's prima facie case of retaliation.

### 3. Causal Link

Plaintiff indisputably engaged in ADEA protected activity and has demonstrated the existence of an adverse employment action, but he still must show that there was a causal link between the two. "A 'causal link' is established when the evidence demonstrates that 'the employer's [adverse employment] decision . . . was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. American Airlines,* 132 F.3d 1112, 1122 (5th Cir. 1998)).

#### a. Reassignment

Even if Plaintiff's unwanted reassignment is an adverse employment action, Plaintiff has failed to demonstrate a causal link between the reassignment and either of his protected activities. Plaintiff was reassigned in February of 1999. There is no causal link between the reassignment and his complaint of age discrimination against Paul Rimmer, which occurred about four years earlier, or his complaint of age discrimination against Babb, which was filed almost two years later. His job reassignment therefore cannot be the basis for his ADEA retaliation claim.

#### b. Denial of Administrative Leave

Plaintiff has failed to demonstrate a causal link between engaging in protected activity and the denial of his request for administrative leave. Babb denied Plaintiff's request for administrative leave on June 12, 2001. Plaintiff offers no evidence of a causal connection between this denial and the complaint against his former supervisor in 1995.

Plaintiff also lodged an informal complaint, followed by a formal complaint, of discrimination against Babb. Plaintiff provides evidence showing that on December 28, 2000, Babb was contacted by an EEOC counselor and told of the informal complaint. Plaintiff relies

15

solely on a time lapse of almost six months to demonstrate a causal connection between his protected activity and denial of his leave request. Although "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation," six months is not considered close timing. *Swanson v. GSA*, 110 F.3d 1180, 1188 & n.3 (5th Cir. 1997) ("[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case."). *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'").

Because Plaintiff has not shown a causal connection between engaging in protected activity and the denial of his request for administrative leave, he has failed to make a prima facie case of retaliation.

4. **Defendant's Legitimate, Non-Discriminatory Reason for Denial of Request**

Even if Plaintiff had established a prima facie case of retaliation, Defendant has provided a legitimate, non-discriminatory reason for denying Plaintiff's request for administrative leave. Defendant has submitted the affidavit of Babb, which explains why he denied Plaintiff's request for administrative leave.

In the affidavit, Babb explains that:

> [Plaintiff] alleges that he was harmed when I did not grant him eight hours of administrative leave or excused absence on June 12, 2001, during the week following Tropical Storm Allison. [Plaintiff] had been on vacation beginning the previous week. He was scheduled to return from vacation on Tuesday, June 12, 2001. He did not return as scheduled, but instead returned on June 13, 2001. After his return, [Plaintiff] submitted a leave form requesting that he be given

eight hours of administrative leave for June 12, 2001. I denied the request based upon my beliefs that administrative leave should not be granted to employees who are already on approved leave and who are unable to report to work due from [sic] a location that is distant from the worksite. Such persons are distinguishable from those employees who are in town and ready to report to work, but who are unable to get to work due to inclement weather. My decision to disapprove the administrative leave caused [Plaintiff] to use one day of paid annual leave from his leave bank. My decision had no impact on [Plaintiff's] pay or compensation.

Mem. in Supp. of Def.'s Mot. for Summ. J., Ex. Eight, p.2.

Plaintiff cannot meet his ultimate burden of showing that Defendant's legitimate reason for denying the request for administrative leave is a pretext for retaliation. As discussed, Plaintiff cannot even prove a causal link between his discrimination complaint against Babb and the denial of his request for leave, let alone prove that filing the complaint was a "but for" cause of the denied request. Therefore, Plaintiff is unable to succeed on his claim of retaliation and Defendant is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Unexhausted Claims is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims that he was discriminated against, or subjected to a hostile work environment, on account of race, sex, and color, are **DISMISSED**. Defendant's Motion for Summary Judgment is **GRANTED**; therefore the alternative Second Motion to Dismiss is **DENIED AS MOOT**. Likewise, Defendant's Motion to Dismiss Plaintiff's Requests for Compensatory Damages and for a Jury Trial is **DENIED AS MOOT**.

IT IS SO ORDERED.

SIGNED this 8 day of February, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**